

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===========================================

GARY A. THOMPSON,

    *Plaintiff,*

v.

GENERAL MOTORS COMPONENTS
HOLDINGS, LLC

    *Defendant.*

**COMPLAINT**

Case No.: 22-CV-6244 CJS

**JURY TRIAL DEMANDED**

===========================================

    Plaintiff, Gary A. Thompson (hereafter "Plaintiff"), appearing *in propria persona*, for his Verified Complaint against the above-captioned Defendant, General Motors Components Holdings, LLC (hereinafter "Defendant" or "GM"), states as follows:

**JURISDICTION**

    1.    This Court has jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. § 1367(a), as Plaintiff is asserting claims under Title VII of the United States Code.

    2.    Plaintiff has exhausted his administrative remedies and has received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), dated on March 9, 2002. (Annexed hereto as ***Exhibit "A"*** is the right-to-sue letter). This action was commenced within the time required by the EEOC's Notice of right-to-sue.

    3.    Plaintiff initially filed a complaint with the New York Stated Division of Human Rights, dated August 27, 2021, alleging claims of racial discrimination and retaliation. (Annexed hereto as ***Exhibit "B"*** is the administrative complaint filed with the NYS Division of

Human Rights, which states the factual background and history for this matter.

## PARTIES AND VENUE

4. Plaintiff's mailing address is P.O. Box 64651 Rochester, New York 14624, which is located in Monroe County.

5. Defendant, General Motors Components Holdings, LLC, operates an automotive component manufacturing plant in Rochester, New York.

## STATEMENT OF FACTS

6. Plaintiff is an African-American male, and was initially hired by Defendant in 2013, where he is currently working as a Production Operator, at the Rochester GM plant.

7. Plaintiff has been a dedicated, loyal and hard-working employee of GM for almost 10 years. However, Plaintiff has also been the target of discrimination and retaliation, by being passed over for promotion numerous times, despite his obvious qualifications and experience.

8. When Plaintiff started working for Defendant, he was encouraged by the Labor Relations Manager Carlton Smith to get his foot in the door at the entry level, build relationships with the Leaders at the Rochester NY plant and make it known that he was interested in joining the Leadership team.

9. Plaintiff applied for a few positions, but never received an invitation for an interview prior to 2016. During this time, Mr. Thompson also noticed that the HR Managers who facilitated the hiring of salaried Supervisors (Karen Shed and Ed Peet), focused on hiring only white males in the role of Supervisors. One of the schools they focused on was the Rochester Institute of Technology of which Plaintiff is a Graduate. Plaintiff also joined GM with several years of Leadership experience from Eastman Kodak Company and Bausch & Lomb.

10. In 2016, Plaintiff personally challenged the Supervisor hiring process when his white co-worker Joe Bithorn was chosen for a Per-Diem Supervisor position over him. Mr. Bithorn did not perform well in the role and was placed back in a Team Leader role. Mr. Bithorn was not as qualified as Plaintiff, and he did not have a degree as Plaintiff did. He was also coached by the Area Leader at the time, Carl Johnson, on how to interview better for the job, assistance that Plaintiff never received.

11. In 2017, a GM Detroit Junior Executive employee, Justen Bond, joined the Rochester plant in the role of Assistant Plant Manager. Plaintiff met with him informally in 2017 and formally in 2018. During their informal discussions in 2017, Plaintiff shared his experiences of being denied Supervisor opportunities and he also shared with him that the HR Managers Ed Peet and Karen Shed only focused on hiring white males as Supervisors. Mr. Justen Bond listened to Plaintiff concerns and promised to investigate.

12. Prior to leaving the Rochester NY plant in 2019, Mr. Bond created a new search committee and they visibly saw minority faces in Supervisory roles for the first time at the Rochester NY plant, but not Plaintiff who started to feel that he was being discriminated against for complaining and speaking up for himself.

13. In 2017, Plaintiff also noticed that he was invited to Supervisor interviews when he applied, but there always seemed to be an HR reason by Ed Peet why he was less qualified than his co-workers who received Per-Diem Supervisor assignments, while Plaintiff was denied these opportunities. As they occurred, Plaintiff shared his concerns with Justen Bond and he promised to monitor the situation.

14. HR Director Ed Peet and hiring managers at GM may argue that Plaintiff did not follow or listen to feedback in how to do better in the interview process, but when Plaintiff would attempt to

3

follow up to do better in the interview process, he would receive the "cold shoulder" and "silent treatment" from HR Director Ed Peet and hiring managers for timely feedback. They would reluctantly get back to Plaintiff two (2) months or so after the interview and it appeared that they were forced to communicate their HR scripted feedback to Plaintiff.

15. Unfortunately, Justen Bond was transferred back to a GM Detroit assignment in 2019. Since Mr. Bond's departure it appeared to Plaintiff that Ed Peet formed an alliance with the hiring Managers within the Rochester NY plant to black ball and discredit him from any leadership opportunities.

16. On March 16, 2017, Plaintiff was identified for a Leadership role as a Shipping Clerk Supervisor, but this opportunity was later removed from him again, by Ed Peet as an act of retaliation for Plaintiff making prior complaints.

17. As recently as April 2021, when Plaintiff was again not selected as a Group Leader, which was another act of retaliation, he basically gave up on any hope to advance within the company, even if the person selected was African-American, the retaliation by this time was personal to Plaintiff and was an attack on his credibility and integrity, regardless of the race of the person who got the promotion.

18. However, several of Mr. Thompson's coworkers have been identified for Per-Diem supervisor assignments and are now Supervisors, but Plaintiff continues to be denied or passed over for these opportunities, which has resulted in substantial loss wages and income for Plaintiff.

19. In general, GM Supervisors are paid at what is referred to as a 6th Level ($80,000-$100,000). Plaintiff current rate of pay is $22.50/hour, which works out to about $43,200 per year, for a yearly differential of $36,800 in pay ($80,000 - $43,200 = $36,800) since

Plaintiff started seeking a promotion in 2014.

## FIRST CAUSE OF ACTION

## DISCRIMINATION UNDER TITLE VII

20. Plaintiff hereby incorporates the paragraphs and allegations stated above, as if fully set forth herein.

21. Title VII requires employers to provide a work environment that is free of abuse and hostility, and free of discriminating animus.

22. By the acts and conduct described herein, a hostile and discriminatory work environment was directed towards Plaintiff by his supervisors based on his race (African-American).

23. Upon information and belief, at all times relevant to this case, Defendant had knowledge of the discriminatory work environment that existed for Plaintiff, and in fact created and participated in the hostile and discriminatory work environment towards Plaintiff by allowing it to continue at the hands of Plaintiff's supervisors, and in particular in the area of being denied promotions.

24. By the acts and conduct described herein, Defendant discriminated against Plaintiff in the terms and conditions of his employment, and the privileges of his employment in violation of Title VII, and in particular in the area of being denied promotions.

25. As a direct and proximate result of these discriminatory acts, Plaintiff suffered monetary damages, loss of income and benefits, emotional distress, mental anguish and suffering.

26. Plaintiff seeks damages and all other forms of relief available under Title VII,

including attorney's fees.

## SECOND CAUSE OF ACTION

## RETALIATION IN VIOLATION OF TITLE VII

27. Plaintiff hereby incorporates the paragraphs and allegations stated above, as if fully set forth herein.

28. By the acts and conduct described herein, Plaintiff engaged in protected activities under Title VII when he issued a formal and/or informal discriminatory complaints to Defendant's HR department and to his supervisors directly pertaining to the alleged discriminatory conduct and treatment he was facing.

29. Upon information and belief, at all times relevant to this case, Defendant was aware that Plaintiff engaged in these protected activities.

30. Upon information and belief, the individuals involved in the complained of incidents and conduct continued to target and harass Plaintiff after he made each of his complaints to management at GM, and in particular in the area of promotions.

31. Plaintiff suffered adverse employment actions as a result of having engaged in these protected activities by being harassed at work and made to endure a hostile work environment, and by being denied promotion over and over again.

32. Based on the foregoing, Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment, and retaliated against him in violation of Title VII.

33. As a direct and proximate result of Defendant's conduct, Plaintiff suffered monetary damages, loss of income and benefits, emotional distress, mental anguish and suffering.

34. Plaintiff seeks damages and all other forms of relief available under Title VII,

including attorney's fees.

## THIRD CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

35. Plaintiff hereby incorporates the paragraphs and allegations stated above, as if fully set forth herein.

36. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of a person's race.

37. Defendant discriminated against Plaintiff on the basis of his race by subjecting him to a hostile work environment based on the alleged conduct described in the Statement of Facts.

38. Plaintiff was forced to continue enduring the offensive discriminatory conduct at the hands of his supervisors, which created a work environment that a reasonable person would consider intimidating, hostile, or abusive.

39. Defendant did not attempt to reasonably prevent and promptly correct the harassing behavior; and never offered or granted Plaintiff any preventive or corrective opportunities, in particular in the area of receiving or even being considered for a promotion.

40. As a direct and proximate result of these discriminatory acts, Plaintiff suffered monetary damages, loss of income and benefits, emotional distress, mental anguish and suffering.

41. Plaintiff seeks damages and all other forms of relief available under Title VII, including attorney's fees.

## DEMAND FOR TRIAL BY JURY

42. Pursuant to the Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an award of damages in his favor in a sum to be determined according to proof and as provided by law, plus attorneys' fees, costs and disbursements incurred in prosecuting this action, and such other and further relief as the court may deem just and proper.

Dated: 5/31/22

*/s/ Gary*

GARY A. THOMPSON
P.O. BOX 64651
Rochester N.Y. 14624
(585) 507-0037
garybfthompson@gmail.com

8